¶ 1. On June 6, 2000, the grand jury of Pearl River County indicted Ronald Cagler for the offense of simple possession of .5 gram of cocaine. In April 2001, the assistant district attorney made a motion to amend the indictment to charge Cagler as a second or subsequent offender under section 41-29-147 of the Mississippi Code of 1972. This motion was not heard until the day of the trial, October 18, 2001. However, before trial Cagler filed a motion to suppress illegally obtained evidence which was overruled by the trial judge. On the day of trial, Cagler was tried and found guilty on the charge in the initial indictment. Soon thereafter, the court proceeded to enter an order allowing the *Page 490 
State to amend its indictment, but no amended indictment was ever prepared or served upon the defendant. A hearing on whether Cagler was a second or subsequent offender was continued until the next day, October 19, 2001. The court later found Cagler to be a second and subsequent offender, and subsequently he was convicted on the simple possession charge in the original indictment and as a second and subsequent offender as in the amended indictment. Cagler also filed a motion for a new trial which was later denied. The court sentenced Cagler to a term of sixteen years, with six years to be suspended, and ten years to serve. He now appeals to this Court.
 STATEMENT OF ISSUES I. WHETHER THE TRIAL JUDGE ERRED WHEN HE DENIED THE PETITIONER'S MOTION TO SUPPRESS THE EVIDENCE.
 II. WHETHER THE TRIAL COURT ERRED IN ITS FAILURE TO GIVE JURY INSTRUCTION D-2.
 III. WHETHER THE TRIAL JUDGE ERRED WHEN HE GRANTED THE STATE'S MOTION TO AMEND THE INDICTMENT.
 IV. WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A MISTRIAL.
 V. WHETHER THE TRIAL JUDGE ERRED DURING VOIR DIRE TO THE EXTENT THAT CAGLER WAS DENIED A FAIR TRIAL.
 FACTS
¶ 2. On or about July 31, 1999, Ronald Cagler was driving a blue Plymouth Colt automobile traveling south on South Beech Street in Picayune, Mississippi. Officer Anthony Brian Clark, who was at the time employed by the City of Picayune as a patrolman, noticed the vehicle operated by Cagler was emitting a considerable amount of exhaust and proceeded to pull the vehicle over. Cagler's vehicle contained only one other passenger who, after being stopped by officer Clark, asked permission to leave the scene and was later granted permission. After pulling over the vehicle, Cagler exited the vehicle and proceeded to hand over his driver's license to the officer. Officer Clark returned to his patrol car to check the validity of the license only to find that Cagler's license had been suspended due to his failure to appear in court.
¶ 3. Subsequently, Officer Clark placed Cagler under arrest for operating a vehicle without the proper equipment and driving with a suspended license. During the arrest, Officer Clark handcuffed Cagler and then proceeded to pat him down. In his pat down, Officer Clark found a wallet and after opening it, found a plastic bag containing a leafy green substance, later determined by the Mississippi Crime Lab to be marijuana,
¶ 4. There is dispute, however, as to exactly where the bag was found within the wallet. There is also a disagreement as to what the officer did with the bag after it was discovered. Cagler and another witness testified Officer Clark threw the bag onto the hood of the defendant's vehicle, whereas Officer Clark testified that he placed the bag in his front uniform pocket. Thereafter, Officer Clark transported Cagler to the Picayune Criminal Justice Center where he was handed over to the jailer and later strip searched. Officer Clark testified that he took the bag of green leafy substance to the squad room where he placed it into an evidence bag to be labeled and put into an evidence locker.
¶ 5. Officer Clark also testified that it was at this point in time when he noticed another bag inside the bag taken from *Page 491 
Cagler's wallet. Officer Clark testified that, after opening the bag, he discovered a small white rock-like substance, which was also later determined to be cocaine by the Mississippi Crime Lab. Officer Clark testified that he placed the second bag in a separate evidence bag, tagged both bags and put them into the evidence locker. Cagler testified that after the strip search, Officer Clark reappeared and informed him that he had been charged with possession of crack cocaine, which he denied, and also that Officer Clark had the bag with him when he informed Cagler of the new charge. Cagler freely admitted to carrying the marijuana and that he purchased it right before being pulled over by Officer Clark, but adamantly denied there was another bag.
 ANALYSIS I. WHETHER THE TRIAL JUDGE ERRED WHEN HE DENIED THE PETITIONER'S MOTION TO SUPPRESS THE EVIDENCE.
¶ 6. The United States Supreme Court in Ornelas v. U.S.,517 U.S. 690 (1996), has held that, as a general matter, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. The court then hastened to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. Id. When determining the existence of probable cause, trial judges should take a "totality of the circumstances" approach. McNeal v. State, 617 So.2d 999, 1006 (Miss 1993). The trial judge should consider "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. In essence the court should examine probabilities and not technicalities.
¶ 7. Probable cause requires information that would reasonably lead an officer to believe that, then and there, contraband or evidence to a criminal investigation would be found. Rooks v. State, 529 So.2d 546, 555 (Miss. 1988).
¶ 8. Just as the trial court found, Cagler's vehicle in this matter, was stopped because of excessive smoke emanating from it. By virtue of Sections 63-7-55 and 63-7-7 of the Mississippi Code of 1972, as amended, the legislature intended for a vehicle to be in proper working order and should not constitute a danger to any person or the public as it operates upon any road or highway. The trial court further found that the uncontroverted testimony of the officer, that smoke was emanating from Cagler's car in such a fashion and in such an amount, constituted probable cause, under the above referenced section of the Mississippi Code, to stop the vehicle and obtain both the identity of the driver as well as the license status of that driver.
¶ 9. The trial judge correctly stated in his order that because Cagler was arrested for a suspended licence after the stop, the search of the defendant goes beyond a Terry search, Terry v. Ohio, 392 U.S. 1
(1968) (where a police officer has a reasonable and articulable suspicion that a suspect is armed and dangerous he, may, without probable cause, perform a pat-down search for concealed weapons) and instead reaches the level of Robinson, United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (when an offense authorizes a full custodial arrest, a search incident to that arrest may follow, even where police do not fear for their safety or believe contraband will be found). The officer involved had every right to search for foreign objects on Cagler *Page 492 
and it was also reasonable for the officer to open the wallet of the defendant to determine if there were any foreign objects which would endanger the safety of the officer. By opening the wallet to the fullest extent, the officer discovered a bag containing a green leafy substance believed to be marijuana and it was this very bag that was later discovered to contain another bag containing cocaine.
¶ 10. For these reasons and in accordance with the aforementioned case law, the actions taken by the officer are found to be within reason under the totality of the circumstances approach used when determining the existence of probable cause. The stop and search were proper and therefore Cagler's claim, that the trial court erred when it denied his motion to suppress, is without merit.
 II. WHETHER THE TRIAL COURT ERRED IN ITS FAILURE TO GIVE JURY INSTRUCTION D-2.
¶ 11. It is the trial judge's responsibility, not the jury, to determine the admissibility of the fruits of the search. Holt v. State,348 So.2d 434, 439 (Miss. 1977). It is also a question of law for the trial judge and not the jury to determine whether or not a search warrant was properly issued. Salisbury v. State, 293 So.2d 434, 438 (Miss. 1974). "It is admissible in the record only to show that there was probable cause for the issuance of the writ. The evidence before the trial judge is not to be again offered before the jury." Id. See Sisk v.State, 290 So.2d 608 (Miss. 1974). In the case of Heidel v. State,587 So.2d 835, 842 (Miss. 1991), the court stated:
 A defendant is entitled to have jury instructions given which present his theory of the case, Murphy v. State, 566 So.2d 1201, 1206 (Miss. 1990); Young v. State, 451 So.2d 208, 210 (Miss. 1984); however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. Murphy, 566 So.2d at 1206.
¶ 12. Instruction D-2 accurately states the law, in as much it tells the jury that evidence obtained through an illegal search cannot be considered evidence and that a search must be reasonable and limited in scope. The inaccurate part of Jury Instruction D-2 charges the jury that it is its function to determine whether or not the search was to find weapons on Cagler or to prevent Cagler from destroying evidence. The instruction also inaccurately states that the jury must not consider the evidence if it finds that the search was not for either one of those purposes. Again, as stated in Holt, it is not the responsibility of the jury, but the trial judge, to determine whether or not the search was supported by probable cause. Holt, 587 So.2d at 842.
¶ 13. Cagler was not entitled to an instruction that did not accurately state the law. Therefore, the trial judge was correct in denying Jury Instruction D-2 and Cagler's claim is without merit.
 III. WHETHER THE TRIAL JUDGE ERRED WHEN HE GRANTED THE STATE'S MOTION TO AMEND THE INDICTMENT.
¶ 14. Cagler argues that he was not served a copy of the amended indictment, and he did not have time to prepare to argue against amending the indictment. He also alleges that he was pardoned for the prior conviction, and had he more time to prepare, he could have proven the pardon.
¶ 15. In the case of Brown v. Sutton, 158 Miss. 78, 121 So. 835, 837 (1929), the court said: "Every court of record has general authority over its own records. *Page 493 
The power of such a court to correct its records so as to make them speak the truth is inherent. The records of a court can be corrected or altered only by the court itself; and another court has no authority to make such corrections, even though it has appellate jurisdiction over the court whose records are sought to be corrected."
¶ 16. Getting to the amendment itself, an indictment can be amended when the amendment goes to form and not to substance. Burson v.State, 756 So.2d 830 (¶ 14) (Miss.Ct.App. 2000). When deciding whether an amendment goes to form or substance, this Court looks to see if the defenses the defendant had originally are equally available to the defendant after the amendment is made. Eakes v. State, 665 So.2d 852, 859-60 (Miss. 1995). After looking at the record in this case it becomes clear the same defenses were available to Cagler after the indictment was amended as were available before the amendment. Cagler would have the same defenses available to him in this case whether he was a repeat offender or not. For this reason, the amendment in this case goes to form and not to substance, and thus would be allowed under Mississippi law.
¶ 17. Rule 7.09 of the URCCC reads as follows:
 Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement. Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not fairly surprised.
Therefore, the trial court was not in error in allowing Cagler's indictment to be amended to reflect his repeat offender status.
¶ 18. In addition, the State's motion to amend the indictment was filed six months prior to trial. On October 16, 2001, a notice was prepared and served by the State noticing a hearing on the motion to Amend Indictment for October 18, 2001, the day of the trial of Cagler. On the day of the trial, defense counsel asked for and received a continuance until 11:00 a.m. the next morning. Cagler's claim that he did not have time to prepare therefore fails. The court granted defense counsel a generous amount of time to prepare for the hearing concerning the motion for an amended indictment. At the sentencing hearing, it was proven that Cagler had been previously convicted of distributing a controlled substance. Defense counsel did not even object to the admission of proof of the prior conviction.
¶ 19. Defense counsel claims that had he been given adequate notice of the amended indictment and time to prepare he would have discovered that Cagler had been pardoned for the prior offense. Cagler could have told his counsel that Louisiana had given him a pardon for his conviction, but he did not. Cagler had sufficient time to confer with his attorney. Cagler did not assert that he had received a pardon when he filed a motion for a new trial. Even at his sentencing hearing, Cagler was asked by the court if he wished to say anything before sentencing was imposed. Cagler responded, "No, sir." At that moment, Cagler could have mentioned his pardon, but he did not.
¶ 20. Cagler has clearly failed to demonstrate an error by the trial court when it allowed the indictment to be amended.
 IV. WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A MISTRIAL.
¶ 21. Cagler alleges that the trial judge erred when he overruled Cagler's *Page 494 
motion for a mistrial. He claims that a person on the venire gave answers to a question that "poisoned the entire jury pool.
¶ 22. In Grayson v State, 806 So.2d 241, 253 (Miss. 2001), the court held that the standard of review applicable to decisions of whether to grant a mistrial based upon voir dire statements of potential jurors is abuse of discretion. The court stated in Hoops v. State, 681 So.2d 521, 528 (Miss. 1996), that generally speaking, a defendant can not complain when damaging and inappropriate testimony is given in response to his question. The Mississippi Supreme Court stated in Perkins v. State,600 So.2d 938 (Miss. 1992), that the trial judge "is in the best position for determining the prejudicial effect" of an objectionable remark. The determination of whether or not a juror is fair and impartial is a judicial question and will not be set aside unless it is clearly wrong.Taylor v. State, 672 So.2d 1246, 1246 (Miss. 1996).
¶ 23. In Grayson, the defendant made no objection when the comment was made. Grayson, 806 So.2d at 253. Only after voir dire was concluded did the defendant make a motion for a mistrial claiming the comment was inflammatory. Id. The court in Grayson neither admonished the jury to disregard the statement nor did the court ask the prospective jury members at the time whether they would be able to disregard the statement. Id. This decision was later affirmed by the Mississippi Supreme Court. In Saucier v. State, 328 So.2d 355, 357-58 (Miss. 1976), the Mississippi Supreme Court also held that a motion for a mistrial came too late when the party waited until a jury had been impaneled.
¶ 24. In accordance with the aforementioned caselaw, the judge did not abuse his discretion when he overruled Cagler's motion for a mistrial. The comments made by the potential juror, Brasington, were apparently honest responses to the question asked by defense counsel. The response given was not such that the entire jury panel was "poisoned" so they could not decide fairly and impartially the case evidence before them. Defense counsel did not even make an objection to Brasington's statement at the time it was made. After the response was given, the trial judge suggested defense counsel ask Brasington if the information given would destroy her impartiality to judge the case. Additionally, Cagler waited until voir dire was concluded, the challenges for cause and peremptory strikes had been made, and the jury selected before he made his motion for a mistrial. According to Saucier, this just is not allowed. Cagler could have easily made his motion for a mistrial during voir dire while the court and the parties could still ask questions in order to determine the feelings and beliefs of the potential jurors. That fact, combined with the brief nature of the comment, suggests that it was not so prejudicial as to warrant a mistrial, and the trial court did not abuse its discretion in denying that motion.
 V. WHETHER THE TRIAL JUDGE ERRED DURING VOIR DIRE TO THE EXTENT THAT CAGLER WAS DENIED A FAIR TRIAL.
¶ 25. Cagler alleges that numerous acts by the trial judge during voir dire denied him a fair trial. His arguments include: (1) the judge did not give counsel ample opportunity to determine the identity and background of two jurors, Karen Jackson and Ruby Twillie, who were absent during voir dire; (2) the judge improperly interrupted defense counsel when he asked questions during voir dire about family members and friends who had been charged with drug problems; (3) the judge again interrupted defense counsel's questioning of Doreen Wallace; and (4) Cagler alleges but never discusses reversible *Page 495 
error due to the racial content of the jury pool.
¶ 26. As to Cagler's first and final claims of this issue, that he was denied opportunity to investigate the identity and background of two African Americans absent from jury service and that there was reversible error due to the racial content of the jury pool, the Mississippi Supreme Court has held and still holds today that "a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." Bell v. State, 725 So.2d 836, 844 (Miss. 1998);Hunter v. State, 684 So.2d 625, 631 (Miss. 1996); Myers v. State,565 So.2d 554, 557 (Miss. 1990); Pickett v. State, 443 So.2d 796, 799 (Miss. 1983). Objections to these two claims were not timely raised by the defense counsel, and as such, the objections are considered waived.
¶ 27. In dealing with Cagler's second and third claim, concerning the trial judge's interruptions during questioning, the Mississippi Supreme Court in Evans v. State, 725 So.2d 613, 651 (Miss. 1998), stated that trial courts have the responsibility to control voir dire, but in doing so must take care not to hinder full exploration of juror's predispositions. In addition, "the line between a proper and improper question is not always easily drawn; it is manifestly a process in which the trial judge must be given a considerable discretion." Harris vState, 532 So.2d 602, 606 (Miss. 1988); Murphy v. State, 246 So.2d 920, 922 (Miss. 1977). This discretion includes passing upon the extent and propriety of questions addressed to the prospective jurors. Rigby v.State, 826 So.2d 694,(¶ 43) (Miss. 2002); Jones v. State,381 So.2d 983, 990 (Miss. 1980).
¶ 28. However, this discretion is not unlimited, and an abuse will be found where "clear prejudice to the accused results from undue constraint on the defense or undue lack of constraint on the prosecution." Jones, 381 So.2d at 990. In conclusion, one of the purposes of voir dire examination is "to enable counsel to ascertain whether there is ground for a challenge of a juror for cause, or for a peremptory challenge." Jackson v. State, 791 So.2d 830, 836 (¶ 24) (Miss. 2001).
¶ 29. In claiming that the court unfairly limited his questioning, Cagler has failed to demonstrate that the trial judge denied him a fair trial. The judge noted that many of the potential jurors raised their hands when asked if any had family members or close friends who had ever been charged with a drug crime. It was clearly reasonable to ask counsel to narrow his question. Therefore, there was no abuse of discretion to consider.
¶ 30. In regards to the interruptions in the questioning of Doreen Wallace, the trial judge was responding to Wallace saying she would have a problem being impartial knowing people were out there giving drugs to children and students. The questions asked by the judge appeared to be seeking information that would allow the court and counsel to determine whether or not they should strike her as a juror. Nothing was said regarding the thoughts of the judge on whether he regarded Cagler as guilty. The record is clear that the judge was trying to ensure the defendant received a fair and impartial jury and not the other way around.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY OFCONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE, SECOND AND SUBSEQUENTOFFENDER, AND SENTENCE OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPIDEPARTMENT OF CORRECTIONS WITH SIX YEARS SUSPENDED ON *Page 496 POST-RELEASE SUPERVISION FOR FIVE YEARS, AND PAY $340.63 IN RESTITUTIONIS AFFIRMED. ALL COSTS TO THIS APPEAL ARE ASSESSED TO PEARL RIVERCOUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS,CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULTONLY.