In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00215-CR
______________________________


ALLAN CUNNINGHAM, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 19930


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            For his part in stealing beer from a garage, and after enhancement,


 a jury assessed Allan
Cunningham twenty-five years' incarceration for burglary of a habitation.


 On appeal, Cunningham
argues that we should reverse his conviction because: (1) the trial court failed to charge the jury that
Bobby Lemon, the codefendant who actually entered the building and took the beer, was an
accomplice witness as a matter of law, (2) the court erred by denying his motion for an instructed
verdict based on the failure to connect him with the crime by nonaccomplice evidence, and (3) the
evidence was legally and factually insufficient to support the verdict. He also contends he received
ineffective assistance of counsel because counsel did not request an accomplice-witness instruction,
failed to object to the admission of evidence about juvenile adjudications, and failed to adequately
impeach a witness. We affirm the judgment of the trial court. 
Background Facts
            Cunningham was riding around with Lemon and Christopher Ray (in Ray's sister's car) when
they backed into the driveway of John Lightfoot's house. As Lemon testified, they were all pretty
well "lit." Lemon testified that he went inside the garage to steal something, and ended up taking
beer out of a cooler. When Lemon came back out with stolen beer in hand, Cunningham was
arguing with one of Lightfoot's neighbors (Larry Buster) who came to make inquiry. A fight ensued,
and both Cunningham and Lemon struck Buster before they drove away, leaving him unconscious
in the driveway. Ray testified that he stayed in the car, that Lemon said it was a friend's house, and
that he had no idea a crime would occur.
            Buster testified that, when he saw the car backed into Lightfoot's driveway, he went over to
see what was going on, and he saw Cunningham in the car. Buster testified that Cunningham yelled
at him and got out of the car, and about then he saw someone else come out of the garage with beer
in his hand, and that both Cunningham and Lemon hit and kicked him until he blacked out. 
            Lightfoot testified he was in the house and did not hear the fight. Buster, bloody from the
battle, banged on his door and told him what had happened. Lightfoot checked his garage and
realized some beer was missing from an ice chest. 
            Lemon testified that, after this occurred, while they were driving around, he saw a pickup
truck with tools in the back. He got out and stole the truck and drove away—with Cunningham
following in Ray's sister's car. Lemon stopped near a business, unloaded the items from the truck
into the car, left the truck there, Lemon got in the car, and Cunningham drove the automobile away. 
            Officer Steven Hill testified that he worked the assault and burglary. Officers stopped the
car and arrested Lemon and Cunningham. When officers inventoried the car, they found three cans
of beer of the type in Lightfoot's cooler, and also found tools, a C.D. case, a rifle, a cell phone, a
video camera, and other items that were identified as property stolen from the pickup truck.
Failure to Instruct the Jury on the Accomplice-Witness Rule
            A. Lemon was an accomplice as a matter of law—egregious harm standard.
            Lemon was an accomplice as a matter of law in this case.


 He was indicted and convicted
for the same offenses and was in prison at the time of this trial. "A conviction cannot be had upon
the testimony of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient if it merely shows the
commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). Cunningham
did not request an instruction to the jury on the requirement of corroborating an accomplice witness'
testimony, and no such instruction was given. In such event, when error occurs in failing to properly
instruct the jury on the accomplice-witness rule, our review of the charge is under the Almanza
standard. Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984). The appropriate harm analysis
depends on whether the defendant preserved error by bringing the improper omission to the trial
court's attention. When the error is preserved, we must reverse if "some harm" is shown. But when,
as in this case, the defendant has not preserved error, he must show egregious harm. Under either
instance, we must review the entirety of the record in reaching our determination. Id. at 171. The
difference in harm standards impacts how strong the nonaccomplice evidence must be for the error
in omitting an accomplice-witness instruction to be considered harmless. Herron v. State, 86 S.W.3d
621, 632 (Tex. Crim. App. 2002).
            The Texas Court of Criminal Appeals has held that, in applying the egregious harm standard,
the omission of an accomplice-witness instruction is generally harmless unless the corroborating
(nonaccomplice) evidence is "so unconvincing in fact as to render the State's overall case for
conviction clearly and significantly less persuasive." Id.; Saunders v. State, 817 S.W.2d 688, 692
(Tex. Crim. App. 1991). 
            In Saunders, the court found harm under that standard because the corroborating
nonaccomplice evidence was weak and was contradicted by other evidence. The alleged crime was
arson and the corroborating evidence involved financial circumstances that seemed somewhat
suspicious at first glance but were given persuasive innocent explanations. As a result, the
corroborating evidence, even if believed, did not have a very strong tendency to connect the
defendant to the crime. Further, much of the evidence in the defendant's favor was uncontradicted,
and the court observed that "[r]ational jurors may not utterly disregard undisputed evidence without
a sensible basis for thinking it unreliable any more than they may simply assume a critical part of the
proof without evidence having an inclination to confirm it." Saunders, 817 S.W.2d at 693.
            In determining the strength of a particular item of nonaccomplice evidence, we examine
(1) its reliability or believability, and (2) the strength of its tendency to connect the defendant to the
crime. Herron, 86 S.W.3d at 632. The test for weighing the sufficiency of corroborating evidence
is to eliminate from consideration the accomplice's testimony and then examine the remaining
evidence to determine if there is evidence that tends to connect the defendant with the commission
of the offense. Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); Reed v. State, 744
S.W.2d 112, 125 (Tex. Crim. App. 1988); Hall v. State, 161 S.W.3d 142, 149 (Tex.
App.—Texarkana 2005, pet. ref'd). The nonaccomplice testimony does not have to directly link the
accused to the crime, it alone need not establish guilt beyond a reasonable doubt, nor must the
corroborating evidence prove all the elements of the alleged offense. Gill v. State, 873 S.W.2d 45,
48 (Tex. Crim. App. 1994). The accused's presence at the scene of the crime is, by itself, insufficient
to corroborate an accomplice's testimony. However, "evidence that an accused was in the company
of the accomplice close to the time of the offense, coupled with other suspicious circumstances, may
tend to connect the accused to the offense." Id. at 49. 
            B. The nonaccomplice testimony connects Cunningham to the burglary.
            In this case, there was nonaccomplice evidence from the neighbor, Buster, that Cunningham
was in the car and that Cunningham attacked him for no reason other than his inquisitiveness. This
response could reasonably have been interpreted by the jury as an effort to aid and assist in the
burglary and to prevent being seen with items stolen from the house. The jury could reasonably have
concluded that this violent reaction evidenced Cunningham's intent to help Lemon complete the theft
and escape. 
            Ray, the other person in the car,


 testified that Cunningham drove the vehicle to the home that
was robbed; Ray saw Cunningham kicking and stomping Buster, and Ray told Cunningham and
Lemon that they had done a bad thing by attacking and beating the man—after which they beat Ray
up and left him (although still driving Ray's sister's car). 
            There is no evidence in this case that Cunningham personally stole the beer. The jury
necessarily convicted him (as provided by the charge) as a party criminally responsible for the
offense committed by Lemon. That type of responsibility exists if "with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense." Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). 
            In this case, there is nonaccomplice testimony that Cunningham was driving the vehicle in
which Lemon and Ray were riding when they went to Lightfoot's house. Lemon entered the garage
and came out with beer. As Lemon was engaged in the burglary, a neighbor came to investigate. 
Cunningham got out of the car and attacked, without provocation, the neighbor who came to inquire
about their actions. Cunningham assisted in attacking Buster, and Cunningham then drove them
away, leaving him on the ground. The evidence shows that Lemon stole the beer from the house,
that Lemon and Cunningham were arrested together, and that the fruits of the theft were found in the
car. Intent may be directly proven, or it may be inferred from circumstantial evidence such as acts,
words, and the conduct of the appellant. Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App.
2004). 
            Although it is clear that an accomplice-witness instruction should have been provided to the
jury, we do not believe that egregious harm resulted from its absence. The nonaccomplice evidence
was of a nature that a jury could reasonably believe was reliable, persuasive, and connected
Cunningham to the burglary. The nonaccomplice evidence, as summarized above, is not "so
unconvincing in fact as to render the State's overall case for conviction clearly and significantly less
persuasive." Herron, 86 S.W.3d at 632. Points of error one and two are overruled. 
Legal and Factual Sufficiency
            Cunningham next contends that the evidence is legally and factually insufficient to support
the verdict. In our review of the legal sufficiency of the evidence, we employ the standards set forth
in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the reviewing court to view the
relevant evidence in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all the evidence in
the record, both direct and circumstantial, whether admissible or inadmissible. Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).
            In a factual sufficiency review, the appellate court views all the evidence in a neutral light
and determines whether the evidence supporting the verdict is too weak to support the finding of
guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d 654,
664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App. 2004)).
            We have summarized the evidence above. There is evidence that the crime occurred and that
Cunningham took violent action against a witness to the crime. The accomplice witness testified that
he did not remember telling Cunningham before the burglary that he intended to steal from the
house. ("I'm not saying they didn't know but I'm saying that I was drinking and I'm saying I don't
remember . . . discussing this with somebody.") However, the district attorney's investigator testified
that Lemon had stated to him that Lemon and Cunningham had discussed "stealing something" at
the Lightfoot house before the burglary. The fruits of the crime were in the automobile driven by
Cunningham at the time of his arrest. The evidence is both legally and factually sufficient to support
the verdict. The contentions of error are overruled. 
Ineffective Assistance of Counsel
            Finally, Cunningham contends that he received constitutionally ineffective assistance of
counsel at trial because of the failure to obtain an instruction on accomplice-witness testimony,
because counsel did not object when his juvenile adjudications were admitted into evidence, and
because of the failure to impeach a witness with a prior statement that the codefendant was the
aggressor. 
            When ineffective assistance is raised on direct appeal, appellate counsel and the court must
proceed on a trial record not developed for the object of litigating or preserving the claim, and thus,
it is often incomplete or inadequate for this purpose. Freeman v. State, 125 S.W.3d 505, 506 (Tex.
Crim. App. 2003).
            The standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance, an appellant
must, by a preponderance of the evidence, prove: (1) trial counsel's performance fell below an
objective standard of reasonableness, and (2) counsel's deficient representation prejudiced the
appellant's defense. Id.; Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To meet this
burden, an appellant must show that the attorney's representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that, but for the attorney's
deficiency, the result of the trial would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex.
Crim. App. 2000). In other words, the appellant must prove counsel's representation so undermined
the proper functioning of the adversarial process that the trial cannot be relied on as having produced
a just result. Strickland, 466 U.S. at 686. If, however, "there is at least the possibility that the
conduct could have been legitimate trial strategy," then we must "defer to counsel's decisions and
deny relief on an ineffective assistance claim on direct appeal." Murphy v. State, 112 S.W.3d 592,
601 (Tex. Crim. App. 2003).
            Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. 
Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712. An appellate court should not second-guess
through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have
pursued a different course support a finding of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592
(Tex. Crim. App. 1979). That another attorney, including appellant's counsel on appeal, might have
pursued a different course of action does not necessarily indicate ineffective assistance. Harner v.
State, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). Any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
            A. Failure to request an instruction on the accomplice-witness rule.
            Counsel did not request a jury instruction that the accomplice-witness testimony must be
corroborated. We have recently addressed this issue in our opinion in Hall v. State, 161 S.W.3d 142
(Tex. App.—Texarkana 2005, pet. ref'd). As we pointed out there, the failure of counsel to request
an accomplice-witness instruction when facts warrant such an instruction may constitute deficient
performance. Id. at 152; Henson v. State, 915 S.W.2d 186, 197 (Tex. App.—Corpus Christi 1996,
no pet.) (citing Ex parte Zepeda, 819 S.W.2d 874, 877 (Tex. Crim. App. 1991)). It is uncontested
that Lemon was an accomplice as a matter of law, and thus, the instruction, which could only favor
the defense, was mandatory on request.
            Unlike the situation in Hall, however, the evidence corroborating the accomplice's testimony
in this case is not weak. Even without the accomplice-witness testimony, there is evidence that
strongly supports a conclusion that Cunningham was involved in the burglary. Buster walked up on
this burglary as it was occurring. After routine inquiries, Cunningham attacked him in what the jury
could reasonably believe was an effort to conceal the burglary. Without repeating the evidence
previously elicited, we find that the corroborating evidence was both compelling and persuasive. 
Even though counsel's failure to request the instruction was deficient, based on the analysis
previously conducted on the evidence elicited at the trial, as well as all of the surrounding
proceedings, we are not convinced from this record that the failure created a reasonable probability
that the result of the trial would have been different in the absence of the deficient conduct. 
Strickland, 466 U.S. at 687.
            B. Failure to object to juvenile adjudications.
            Cunningham also argues that his counsel was deficient because he did not object to the
admission of evidence about his juvenile adjudications at the punishment stage of the trial. The
complained-of evidence consists of a list of juvenile adjudications, many from another state, and
some of which were felony level, while others were misdemeanor. We also recognize the State
mentioned Cunningham's juvenile history several times during argument as a basis for a sentence
of lengthy incarceration.
            Article 37.07, Section 3(a)(1), states that "evidence may be offered by the state and the
defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of
the grade of: (A) a felony; or (B) a misdemeanor punishable by confinement in jail." Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2006). However, such evidence is limited. 
Article 37.07, Section 3(i), states as follows:
Evidence of an adjudication for conduct that is a violation of a penal law of the grade
of misdemeanor punishable by confinement in jail is admissible only if the conduct
upon which the adjudication is based occurred on or after January 1, 1996.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(i) (Vernon Supp. 2006).


 See generally Wallace v.
State, 135 S.W.3d 114, 120 (Tex. App.—Tyler 2004, no pet.).
            The net effect of these provisions is that juvenile adjudications of delinquency which 
occurred before January 1, 1996, are not admissible, as prior adjudications of delinquency, unless
the adjudication was for a felony-grade offense. An objection to juvenile adjudications of the grade
of misdemeanor, all of which occurred before January 1, 1996, should have prevented their
admission as adjudications. However, evidence of the conduct underlying such an adjudication may
be admissible as extraneous crimes or prior bad acts if properly proven. Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a)(1); Rodriguez v. State, 975 S.W.2d 667, 687 (Tex. App.—Texarkana 1998,
pet. ref'd). In this case, no evidence of such bad acts was presented during the State's case, other than
the attempt to introduce these offenses as adjudications of delinquency. The document introduced,
Exhibit 29, was only a summary in a presentence report, not certified copies of judgments. No other
evidence was presented during the State's case concerning the conduct of Cunningham that led to
the adjudications. Exhibit 29 shows Cunningham's convictions as follows:
November 28, 1993    motor-vehicle larceny—(unauthorized use of a motor vehicle—or burglary
of a motor vehicle) (F)



November 28, 1993    Injured property (M)
November 28, 1993    Larceny (M)
February 1, 1994        Motor vehicle larceny (F)
February 1, 1994        Breaking and entering a motor vehicle—(burglary of a motor vehicle)
(three counts) (F)
February 24, 1994      Motor-vehicle larceny (F)
December 7, 1994      Assault (M)
October 26, 1995        Community threat 
November 29, 1995    Disorderly conduct
November 29, 1995    Credit card abuse
November 29, 1995    Assault of a police officer (M)
November 28, 1995    Injured property (M)

            The State acknowledged at trial that "some of these are misdemeanors and some are
felonies." 
            The State is allowed in the punishment hearing to prove evidence of extraneous offenses and
even bad acts that are deemed relevant and shown beyond a reasonable doubt by the evidence to have
been committed by the defendant regardless of whether he or she was charged or convicted of such
crimes or acts. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). One method of providing such
proof beyond a reasonable doubt is to question the defendant when he or she voluntarily submits to
cross-examination. Cunningham testified and acknowledged his juvenile record. On direct
examination, Cunningham was asked by his counsel, "So, you do not deny the juvenile record that
has been presented to the jury today? A. No, sir." He was then asked if he denied the misdemeanor
record and answered that some were dismissed. On cross-examination, the State questioned
Cunningham about the specific events shown on his juvenile record. 
            It is conceivable that counsel's actions were strategically planned. Since Cunningham was
requesting the jury grant him community supervision in lieu of confinement, counsel may have
thought it necessary to present Cunningham's testimony, knowing such action subjected him to cross-examination, which would allow the State to prove his juvenile record as constituting admissible bad
acts. See Rodriguez, 975 S.W.2d at 687; Strasser v. State, 81 S.W.3d 468, 470 (Tex.
App.—Eastland 2002, no pet.). Counsel could have believed that the only effective method of
convincing a jury to grant community supervision to Cunningham was to allow him to testify; let
him explain that his prior juvenile record occurred while he was young and without guidance; and
urge that he had reformed. To accomplish this goal, counsel may have calculated that it was more
persuasive to admit that Cunningham had a poor record as a young person, but explain he had never
been convicted as an adult of a felony offense and was eligible for community supervision.


 Such
an attempt could have been to attempt to personalize Cunningham to the jury as a young person who
had no parental guidance as a child, but who now admitted his prior mistakes and accepted societal
rules. The evidence presented by Cunningham appears to substantiate this as the defense strategy. 
Cunningham testified that he had never been convicted as an adult of a felony; he had no parental
assistance as a child; he took full responsibility for his bad choices; before the charges were filed he
had enlisted in the United States Army; he was attempting to change his life by enrolling in a
computer school; and that, if he received community supervision, he would still have his job. In
closing argument, counsel argued that Cunningham had turned his life around and asked the jury to
grant community supervision. We have no record from which to evaluate the rationale of counsel
in choosing the course of action that he did, and it is beyond our purview to second guess counsel's
strategy even if the choice of strategy was not successful. As the Texas Court of Criminal Appeals
has held many times, "In most instances, the record on direct appeal is inadequate to develop an
ineffective assistance claim." Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). If
there is at least the possibility that the conduct could have been legitimate trial strategy," then we
must "defer to counsel's decisions and deny relief on an ineffective assistance claim on direct
appeal." Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).
            From this record, Cunningham has not shown this Court that trial counsel's actions were
below an objective standard of reasonableness. 
            C. Failure to impeach witness.
            Cunningham also contends that counsel was ineffective because he did not impeach Buster
with his prior written statement to police. Buster testified that both Lemon and Cunningham were
hitting and kicking him and that he could not tell who threw the first blow. On cross-examination,
he testified he was not sure who had attacked him first. Appellate counsel argues that Buster's
statement had indicated that Lemon had initially attacked him and that trial counsel was inadequate
because, although referring to the statement, he did not seek to introduce the statement by the use
of extrinsic evidence. See Tex. R. Evid. 613(a). 
            This constitutes a question of trial tactics. We do not have a copy of the statement, thus, we
do not know its contents, but from counsel's description it appears to show nothing more than which
of the two hit Buster first. This is not a particularly important issue, and counsel may well have felt
it was of insufficient importance to spend additional time and energy—in effect—showing the jury,
again, that his client hit and kicked a man in his mid-70's who was trying to protect an even older
man living next door. The contention of error is overruled.
            We affirm the judgment.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          August 19, 2006
Date Decided:             September 19, 2006
 
Do Not Publish



ire examination lies within the sound discretion of the trial court. 
Mendoza v. State, 552 S.W.2d 444, 447 (Tex. Crim. App. 1977).
          Comments or questions by prospective jurors, made in the presence of the entire
panel, may be harmful to the defendant. To be prejudicial, the remark must be reasonably
calculated to prejudice other members of the panel. Alfano v. State, 780 S.W.2d 494, 496
(Tex. App.—Corpus Christi 1989, no pet.). Making a jury panel—and thus, the jury
selected from that panel—aware of a defendant's prior criminal record is inherently
prejudicial because of the jury's natural inclination to infer guilt of the charged offense from
that record. See Tex. R. Evid. 609(a); Abdnor v. State, 871 S.W.2d 726, 738 (Tex. Crim.
App. 1994); Enriquez v. State, 56 S.W.3d 596, 602 (Tex. App.—Corpus Christi 2001, pet.
ref'd). In the instant case, however, Russell's counsel invited the objectionable comment
made by the prospective juror, and Russell's motion for mistrial, based on that comment,
was untimely.
                     2.       Invited errorDuring voir dire, Russell's counsel was questioning the jury panel, row by row, about
whether they had seen or heard anything on television, or read anything in the newspaper,
about the case that caused them to form any opinions concerning Russell's guilt. The
objectionable comment came in the following exchange:
          [COUNSEL]: On this side. That's Ms. Perkins, Mr. Miller and
Mr. Jack. Anything that you saw or heard and formed any opinion about
Mr. Russell's case?

          JUROR:        (No audible response)

          [COUNSEL]: Mr. Bates?
 
                     JUROR:        I understand that he had 24 criminal priors.

          Shortly after this exchange, the trial court instructed another prospective juror not
to refer to the content of what he may have heard on television or read in the newspaper. 
However, at no time before Juror Bates uttered his comment about the "24 criminal priors"
had Russell's counsel instructed the panel not to disclose what they may have read in the
newspaper or heard on television. In fact, at that point in the voir dire, counsel had already
specifically asked another prospective juror what information she had heard or seen with
regard to this case. Therefore, based on counsel's questioning of the other panel
members, and based on the way the question had been phrased when Bates was called
on to respond, Bates could have reasonably believed his answer was responsive to the
questioning. We therefore conclude that, if the trial court erred in denying Russell's motion
for mistrial, his counsel invited the error.
          The law of invited error estops a party from asserting error based on an action that
party induced. Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999). One cannot
invite a prejudicial comment from a prospective juror and then rely on that comment for a
mistrial. Such a situation was presented in Century 21 Real Estate Corp. v. Hometown
Real Estate Co., 890 S.W.2d 118, 128–29 (Tex. App.—Texarkana 1994, writ denied). 
There counsel for International and South Central asked the jury panel members to
indicate if they had any feelings about the case. One panel member did and proceeded
to express his strong feelings against International and South Central's position in the
case. Like counsel for Russell in the instant case, counsel for International and South
Central did not object to the comment at the time it was made but, before the selected
jurors were seated, asked the court to grant a mistrial because the prospective juror's
comment had so prejudiced the minds of the other panel members as to prevent
International and South Central from obtaining a fair trial. The trial court overruled the
motion, noting that counsel had invited the comment. This Court affirmed the trial court's
denial of the motion. See also Patterson v. State, 654 S.W.2d 825, 827 (Tex.
App.—Dallas 1983, pet. ref'd).
                     3.       Motion for mistrial untimely
          Further, Russell's motion for mistrial was untimely. The prospective juror's comment
that formed the basis for Russell's motion appears on page forty-six of the reporter's
record. No objection was made to the comment until after counsel had completed his voir
dire, the jury lists were struck, and the jury was seated in the jury box. That is when
Russell made his motion for mistrial, which appears on page sixty of the reporter's record. 
           To be timely, a motion for mistrial must be "raised at the earliest opportunity" or "as
soon as the ground . . . becomes apparent." See Martinez v. State, 867 S.W.2d 30, 35
(Tex. Crim. App. 1993); Ponce v. State, 127 S.W.3d 107, 110 (Tex. App.—Houston [1st
Dist.] 2003, no pet.); Thomas v. State, 884 S.W.2d 215, 216 (Tex. App.—El Paso 1994,
pet. ref'd). 
          In Farris v. State, 155 Tex. Crim. 261, 233 S.W.2d 856, 859 (1950), Farris
complained of the trial court's failure to declare a mistrial because the jury panel was
present in the courtroom while Farris' counsel was presenting preliminary motions to the
court. No one noticed that the jury panel was seated in the courtroom until one of the
panel members approached the court with a request to be excused. Nonetheless, Farris
apparently waited until after the jury was selected to urge his motion for mistrial. The
Texas Court of Criminal Appeals held that he waited too late.
          In Cagler v. Mississippi, 844 So.2d 487, 494 (Miss. Ct. App. 2003), Cagler
contended that a person on the jury panel gave answers to a question that "poisoned the
entire jury pool" and that the trial court erred when it overruled his motion for mistrial. 
Citing Saucier v. State, 328 So.2d 355, 357–58 (Miss. 1976), where the Mississippi
Supreme Court held that a motion for mistrial came too late when the party waited until a
jury had been impaneled, the Mississippi Court of Appeals held the trial court did not err
in overruling Cagler's motion for mistrial, noting Cagler waited until voir dire was concluded,
the challenges for cause and peremptory strikes had been made, and the jury selected
before he made his motion. The court further pointed out that Cagler could have easily
made his motion for mistrial during voir dire while the court and the parties could still ask
questions in order to determine the feelings and beliefs of the potential jurors.
          The facts in Cagler are very similar to the instant case. The ground for a mistrial
should have been apparent to Russell at the time the potential juror uttered his comment
about the "24 criminal priors." Yet he made no objection to the comment at that time, but
continued to the completion of his voir dire and waited until after the challenges for cause
and peremptory strikes had been made and he saw who was on the jury, to move for a
mistrial. As the ground for his motion was not "raised at the earliest opportunity," the trial
court did not abuse its discretion in overruling it. 
 

III.      CONCLUSION
          Having concluded that the trial court's failure to grant Russell's motion to change
venue did not deny him his constitutional right to a trial by an impartial jury, that Russell's
counsel invited the objectionable comment made by the prospective juror, and that his
motion for mistrial, based on that comment, was untimely, we overrule his points of error. 
          The judgment is affirmed.
 
Donald R. Ross
Justice



CONCURRING OPINION

          I agree with the majority opinion except with regard to the discussion of invited error.
          As shown in the majority opinion, this case involved a great deal of pretrial media
coverage. Counsel for Russell properly was attempting to inquire of the veniremembers
if this publicity had caused them to have an opinion as to the defendant's guilt. He began
by asking if anyone had heard anything or read newspapers about the case and then
asked one of the jury panelists, "[W]hat information did you hear or see with regard to this
case?" Following that answer, he then asked, "Did you form any opinion whatsoever after
seeing that information on the news?" He then began to examine each row of jurors
asking, "Did you form an opinion based on what you read or saw on television with regard
to Mr. Russell's guilt or innocence?" "Same question to Ms. Thompson and Mr. Campbell? 
Did you form any opinion about what you saw or heard?" The reporter's record reflects
that Russell's counsel then asked a question nine additional times as to whether the
members had formed any opinion on what they had seen or heard before asking Juror
Bates, "Anything that you saw or heard and formed any opinion about Mr. Russell's case?" 
The response was, "I understand that he had 24 criminal priors."
          The majority concludes that, since counsel's question could have led the juror to
reasonably believe his answer was responsive, the question invited error. I disagree. 
Invited error normally occurs when a party takes some action that leads a court into error. 
Therefore, the party cannot complain of the court's action. This is illustrated by several
cases. In Prystash v. State, 3 S.W.3d 522 (Tex. Crim. App. 1999), the defendant
requested the court omit a jury instruction concerning the requirement for holding one
criminally responsible as a party for capital murder when he did not personally kill the victim
and on appeal complained of such omission. Similarly, in Ex parte Guerrero, 521 S.W.2d
613 (Tex. Crim. App. 1975), a defendant requested the trial court to assess his sentences
consecutively and then later complained of it. Likewise, in Santellan v. State, 939 S.W.2d
155 (Tex. Crim. App. 1997), the defendant requested the trial court to instruct the jury
concerning the law of parole and then complained of the instruction. In each of these
instances, the defendant was barred or estopped from such complaint as his actions
induced the court to commit an error. Here, there is no contention defense counsel caused
the trial court to err.
          I do not believe that counsel's question can be considered as an invitation to create 
error. It is true counsel had asked one juror what he had seen or heard, but by far the
preponderance of the questions and the general tenor inquired about was whether the
jurors had formed an opinion of Russell's guilt from what they had seen or heard.
          The cases cited in the majority opinion correctly state the general rule that an invited
error estops a party from asserting error based on an action that party induced, but do not
support the conclusion that the action in this case constitutes invited error. As mentioned,
the Prystash case involved the defendant requesting the omission of an instruction and
later complaining of it. In Century 21 Real Estate Corp. v. Hometown Real Estate Co., 890
S.W.2d 118 (Tex. App.—Texarkana 1994, pet. denied), the court held that the trial court
has discretion to deny a mistrial and that a party complaining of it must show that the
court's action was an abuse of discretion and reasonably calculated to cause and probably
did cause the rendition of an improper judgment. Since the defendant did not show it was
prejudiced or that the court abused its discretion and the jury was properly instructed, this
Court affirmed the judgment. Even though the trial court stated that comment was invited,
this Court did not rely on or mention the doctrine of invited error in affirming the judgment. 
          A party may be estopped from complaining if the party's conduct during the course
of a trial is so egregious as to constitute a deliberate attempt to cause a mistrial. In Franks
v. State, 961 S.W.2d 253 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd), the defendant
personally initiated conversations with members of the jury and later complained about the
jury having improper contacts with him. The court invoked the doctrine of invited error and
stated that otherwise the defendant could "deliberately cause a mistrial by engaging in
such unauthorized conversation with jurors." Id. at 255.
          I do not believe this case involved the doctrine of invited error. Clearly, the defense
attorney did not induce the trial court to commit an error for which he is now complaining. 
Furthermore, I do not believe that this case represents such egregious conduct to
"deliberately cause a mistrial" such as in Franks. The questions defense counsel posed
were legitimate attempts to inquire of the veniremembers if they had already formed an
opinion as to whether Russell was guilty. I believe that the answer by Juror Bates was
nonresponsive. Even if the answer can be construed as responsive to a poorly framed
question, I do not believe counsel's action indicated a deliberate attempt to cause a
mistrial. Since defense counsel's conduct neither (1) caused the court to commit error, or
(2) was an attempt to deliberately cause a mistrial, the doctrine of invited error is not
applicable.
 

          In all other respects, I agree with the majority opinion and therefore concur in the
judgment.
 
                                                                           Jack Carter
                                                                           Justice

Date Submitted:      July 19, 2004
Date Decided:         September 1, 2004

Publish